## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CERU,<br><br>    *Plaintiff*,<br><br>  v.<br><br>ALLY BANK,<br><br>    *Defendant*. | Civil Case No.:  7:24-cv-6733<br><br>**JURY TRIAL DEMANDED** |

### PRELIMINARY STATEMENT

1. Plaintiff is a victim of unauthorized transactions from his savings account with Defendant Ally Bank ending in x9167 (the "Account")

2. On April 4, 2024, Plaintiff discovered the unauthorized charges on his savings account with Defendant.

3. The amount transferred from Plaintiff's Account totaled $19,023.45 (the "Stolen Funds").

4. Plaintiff promptly and repeatedly disputed the transaction(s) with Defendant and provided supporting documentation to no avail.

5. Plaintiff brings claims against Ally Bank ("Defendant" or "Ally Financial") for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA").

### JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 15 U.S.C. §  and 28 U.S.C. § 1331.

7. Supplemental jurisdiction exists for the state law claim(s) pursuant to 28 U.S.C. § 1367.

8. Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

9. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

10. Plaintiff Robert Ceru is a natural person and citizen of the United States residing in Wappingers Falls, Dutchess County, NY.

11. Plaintiff is a "consumer" as defined by each of the relevant statutes.

12. Defendant Ally Bank is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

## STATEMENT OF FACTS

13. Plaintiff maintains a savings account with defendant Ally Bank ending in x9167.

14. Sometime in November 2023, Plaintiff revoked a prior authorization allowing Ally Bank to deduct credit card payments from his Account.

15. On or around April 4, 2024, Plaintiff discovered that his Account had two (2) transactions which were never authorized.

16. The first unauthorized transaction was on December 21, 2023, for $9,327.15 and applied as payment to a certain Wells Fargo credit card.

17. The second unauthorized transaction occurred on January 19, 2024, for $9,696.30 and, again, applied as payment to the same Wells Fargo credit card.

18. Immediately, Plaintiff submitted a transaction dispute with Defendant concerning the two unauthorized withdrawals, designated by Defendant as Case No. 563359-798768 and Case No. 563341-798750.

19. On or about the third week of April 2024, Plaintiff received a letter from Ally dated April 11, 2024, which essentially denied his claims under Case No. 563359-798768 on the ground that it was purportedly authorized.

20. Plaintiff also received a second letter dated April 11, 2024, which concluded that the transaction under Case No. 563341-798750 was authorized based on the assertion that Plaintiff had previous transactions with the financial institution to which payment was made; hence, Plaintiff's dispute was also denied.

21. Plaintiff appealed the denial through a Letter dated April 29, 2024, which Plaintiff sent by certified mail.

22. On or about May 9, 2024, Plaintiff called Defendant's customer care and requested to appeal both disputes. In response, Plaintiff was advised by Ally Bank that he would be receiving dispute forms that must be signed and mailed back to Defendant.

23. Plaintiff did not authorize the two transactions amounting to $19,023.45.

24. Plaintiff did not receive any notification or warning regarding these transactions.

25. As of today, Plaintiff has yet to recover the entire amount of $19,023.45 taken from his Account.

### FIRST CAUSE OF ACTION

**Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.**

26. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

27. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

28. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

29. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

30. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

31. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>
>> (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
>>
>> (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

32. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

33. Defendant's stated basis for denial is invalid under the EFTA.

34. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

35. Defendant cannot meet its burden of proof here, where Plaintiff:

   a) Promptly disputed the transactions;

   b) Provided details regarding the unauthorized access of his account

   c) Has no criminal history;

   d) Has no history of filing false disputes; and

   e) The thefts are inconsistent with Plaintiff's patter of use.

36. Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d). *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

37. Defendant also violated the EFTA by failing to provide Plaintiff with notice of his right to request reproductions of all documents which Defendant relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

38. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

39. Defendant did not conduct a good faith investigation regarding the stolen funds.

40. Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendant.

41. Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

42. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Conversion

43. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

44. Plaintiff had a possessory right to the funds in the Account.

45. Under the circumstances set forth herein, the funds constituted personal property.

46. Defendant intentionally, and without authority, assumed and exercised control over Plaintiff's funds.

47. Defendant's dominion over the funds and interference with the funds was in derogation of Plaintiff's rights, including but not limited to Plaintiff's right to have the funds returned to them.

48. As a result of Defendant's actions, Plaintiff suffered actual damages, including but not limited to the amount of the funds converted.

### THIRD CAUSE OF ACTION

#### Negligence

49. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

50. As a customer of Defendant, Defendant Ally Bank owed Plaintiff a duty of reasonable care.

51. Defendant breached that duty by failing to take reasonable efforts to protect the Account from fraudulent activity and to ensure that the Account was not used for illegal and improper activity.

52. In particular, Defendant breached its duty to exercise reasonable care by not preventing or flagging as suspicious the Unauthorized Transfer(s) without confirmation from Plaintiff.

53. Defendant's conduct harmed Plaintiff because Plaintiff did not authorize the Unauthorized Transfer(s), yet the transfer(s) were processed.

54. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to past and future monetary loss, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seek(s) judgment in his favor and damages against Defendant:

    A.    awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

    B.    such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demand(s) a trial by jury of all issues triable by jury.

Dated: September 5, 2024

        */s/H. Cooper Ellenberg*
        H. Cooper Ellenberg
        Schlanger Law Group, LLP
        60 East 42nd Street
        46th Floor
        New York, NY 10165
        T: 212-500-6114
        F: 646-612-7996
        E: hellenberg@consumerprotection.net